## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIE FRANCO. | No. 3:22-cr-43 (VAB) |

### RULING AND ORDER ON MOTIONS TO SUPPRESS

Willie Franco ("Defendant") is charged with (1) conspiracy to possess with intent to distribute fentanyl and cocaine, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(vi); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (4) unlawful possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Superseding Indictment, ECF No. 56.

On December 27, 2022, Mr. Franco filed two motions to suppress evidence obtained incident to his arrest and evidence seized from his residence at 121 Harbour Close (the "Harbour Close Residence"), as well as a motion to unseal a search warrant affidavit. Mot. to Suppress Any/All Evid. Incident to Unlawful Arrest, ECF No. 85 ("First Mot. to Suppress"); Mot. to Suppress Any/All Evid. Seized from 121 Harbour Close Residence, ECF No. 86 ("Second Mot. to Suppress"); Mot. to Unseal Def's March 6, 2022 Search Warrant Aff. and Mot. for Clarification, ECF No. 87 ("Mot. to Unseal"). Mr. Franco argues that the challenged evidence should be suppressed because his arrest was unlawful and because a warrant authorizing a search of the Harbour Close Residence lacked probable cause.

For the following reasons, Mr. Franco's motions to suppress are **DENIED**, and his motion to unseal is **DENIED as moot**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Based on the indictment and the parties' filings, the following facts are alleged.[1]

Investigators from the United States Postal Inspection Service ("USPIS") and the United States Drug Enforcement Agency ("DEA") began investigating Mr. Franco and Daniella Fox in December 2021. Maynard Aff. ¶ 10, ECF No. 12-1. That month, USPIS Inspector Geoff Maynard was alerted by inspectors in Arizona to a suspicious parcel that was shipped through the United States Postal Service ("USPS") from Arizona to an address on Glen Haven Road in New Haven, Connecticut. Gov't's Opp'n to Def.'s Mots. to Suppress at 4, ECF No. 94 ("Opp'n"); Maynard Aff. ¶ 21.

On December 15, 2021, this parcel was delivered to the Glen Haven Road address by an USPIS inspector posing as a mail carrier. Maynard Aff. ¶ 24. Shortly afterwards, a man matching Mr. Franco's description and identification photo emerged from the residence carrying a shopping bag, which contained a large box that appeared be the delivered parcel. *See id.* ¶ 27. He placed the bag inside a rental car leased by Ms. Fox and drove away, with a woman matching Ms. Fox's description and driver's license photo in the passenger seat. *See id.* ¶¶ 25–27.

Mr. Franco and Ms. Fox have been in a long-term romantic relationship dating back to at least 2015. *Id.* ¶ 10. That year, the pair were arrested as part of a DEA investigation that involved

---

[1] Mr. Franco requests an evidentiary hearing on the issues raised in his motions. "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (internal quotation marks omitted). A hearing is unnecessary, however, when the defendant's moving papers "did not state sufficient facts which, if proven, would have required the granting of the relief requested." *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969); *see also Watson*, 404 F.3d at 167 (holding that an evidentiary hearing was not required when the defendant "failed to show that he could challenge the search under the Fourth Amendment, even assuming we credited the facts asserted in his counsel's affirmation."). For the reasons discussed herein, Mr. Franco's motions and affidavits do not establish the need for an evidentiary hearing.

felony narcotics charges. *Id.* Mr. Franco was sentenced to 80 months in federal prison and is currently on supervised release. *Id.* Ms. Fox was sentenced to 12 years of imprisonment on state charges, although she is no longer in custody or on state probation. *Id.* Thus, the Government alleges, Mr. Franco and Ms. Fox were known to law enforcement agencies in the New Haven area as being involved in narcotics trafficking. *See id.*

Investigators had also linked Mr. Franco and Ms. Fox to narcotics trafficking activities before December 2021. On April 21, 2021, a DEA confidential source purchased four baggies of suspected crack cocaine and one bundle of suspected heroin from Mr. Franco and Ms. Fox. *Id.* ¶ 37. In August and September of 2021, local police in Milford, Guilford, and Branford reported three fatal overdoses in which either the victim or the drugs consumed were linked to Mr. Franco or Ms. Fox. *See id.* ¶ 40.

After the initial controlled delivery of the suspicious parcel at the Glen Haven Road residence, federal investigators continued to conduct intermittent surveillance on that address and another residence on Main Street in East Haven at which Mr. Franco and Ms. Fox began receiving packages. *See id.* ¶¶ 29–35. Friends or relatives of Mr. Franco and Ms. Fox resided at both of these addresses, and investigators believed that Mr. Franco and Ms. Fox were using these locations in order to avoid receiving narcotics shipments at the Harbour Close Residence where they lived. *See id.* ¶ 36.

Investigators also discovered that particular Internet Protocol ("IP") addresses were being used to track suspicious parcels being shipped to the Glen Haven Road address as well as a parcel shipped by Ms. Fox to an address in Fresno, California. *See* Opp'n at 7. The service address for both IP addresses was the Harbour Close Residence, and the telephone number linked to the IP addresses' Comcast account was associated with Ms. Fox. *See id.* at 7–8.

On or about March 2, 2022, investigators identified a USPS parcel addressed to the Main Street address as possibly containing a controlled substance. Maynard Aff. ¶ 13. The parcel was detained in transit by USPIS investigators, placed among similarly sized parcels, and examined by a narcotics detection dog. Opp'n at 9. The dog alerted to the detained parcel, at which point the parcels were rearranged, and the dog once again alerted to the same parcel. *Id.*

Investigators then obtained a warrant to search the parcel from the Honorable U.S. Magistrate Judge Thomas O. Farrish. Maynard Aff. ¶ 16. The parcel contained a microwave oven in which two bricks of white powder were hidden. *Id.* One brick field tested positive for fentanyl, and the other brick tested positive for cocaine. *Id.*

On March 7, 2022, USPIS inspectors conducted a controlled delivery of this parcel to the Main Street residence. *Id.* ¶ 43. Around 9:30 a.m., investigators observed Mr. Franco and Ms. Fox leave the Harbour Close Residence and drive to the Main Street address in a red Porsche. *Id.* ¶ 44. After an inspector posing as a USPS mail carrier delivered the package outside the front door, Ms. Fox got out of the driver's seat and walk up to the parcel. *Id.* ¶ 47. Investigators then approached the residence and took Ms. Fox into custody. *Id.*

At the same time, investigators observed Mr. Franco trying to move from the front passenger seat of the Porsche to the driver's seat. *Id.* He was unable to do so, however, and he was arrested as well. *Id.*

Mr. Franco does not dispute the Government's account of the events leading up to his arrest. Instead, he states only that officers never saw him get out of the parked vehicle, never saw him make an agreement with anyone on March 7, 2022, and never saw him commit a crime on that day. Def.'s Aff. in Supp. of My Mot. to Suppress ¶¶ 3, 6, 10, ECF No. 85-2 ("First Franco Aff.").

Shortly afterwards on March 7, investigators executed a search warrant at the Harbour Close Residence. Maynard Aff. ¶ 48. The warrant had been obtained the day before from the Honorable U.S. Magistrate Judge Robert M. Spector, and it authorized agents to search for USPS parcels and records of such parcels, as well as any computer equipment or digital devices that could be used to track USPS packages or in other ways commit or further narcotics trafficking. *See id.*; Search Warrant, 3:22-mj-252 (RMS), ECF No. 4 ("March 6 Search Warrant"). Upon executing the warrant, investigators discovered an open USPS parcel containing suspected narcotics. Maynard Aff. ¶ 49. They then obtained further warrants from Judge Spector, including one authorizing a broader search of the Harbour Close Residence. *See* Opp'n at 18; Search Warrants, 3:22-mj-252 (RMS), ECF Nos. 11, 13, 15.

Mr. Franco admits that he resides at the Harbour Close Residence, but he states that he never conducted any controlled buys or other drug transactions there and that Inspector Maynard never saw him engage in any type of criminal activity there. *See* Def.'s Aff. in Supp. of My Pretrial Mots. ¶¶ 2–5, ECF No. 88 ("Second Franco Aff."). Mr. Franco does not assert any other facts that conflict with the Government's account of the Harbour Close Residence search.

### B.  Procedural History

On March 15, 2022, Mr. Franco was indicted on one count of conspiracy to possess with intent to distribute fentanyl and cocaine, one count of possession with intent to distribute fentanyl, and one count of possession with intent to distribute cocaine. Indictment, ECF No. 16.

On July 14, 2022, Mr. Franco's federal defender filed a motion to withdraw and to appoint substitute counsel based on a conflict of interest identified by the Office of the Federal Defender. Mot. to Withdraw as Att'y and Appoint Substitute Counsel, ECF No. 41.

On July 15, 2022, the Court granted the motion to withdraw and directed the Clerk of Court to appoint new counsel from the Criminal Justice Act Panel. Order, ECF No. 42.

On July 26, 2022, Attorney William Paetzold was appointed as counsel for Mr. Franco.

On August 29, 2022, Mr. Franco filed his first motion to proceed *pro se*. Mot. to Proceed Pro Se, ECF No. 48.

On October 5, 2022, Mr. Franco filed a second motion to proceed *pro se*. Mot. to Proceed Pro Se, ECF No. 50.

On November 1, 2022, a grand jury returned a superseding indictment against Mr. Franco, dropping the cocaine possession count and adding two new firearms counts. Superseding Indictment, ECF No. 56.

On November 9, 2022, the Court held a hearing on Mr. Franco's motions to proceed *pro se*. Min. Entry, ECF No. 67. At the hearing, the Court appointed Attorney Cheryl Heffernan as new counsel for Mr. Franco and denied Mr. Franco's motions to proceed *pro se* without prejudice to renewal. Order, ECF No. 68.

On November 17, 2022, Attorney Heffernan submitted on behalf of Mr. Franco a motion for reconsideration of the Court's November 9 Order. Mot. for Reconsideration, ECF No. 73.

On November 18, 2022, the Court issued an order taking Mr. Franco's motion for reconsideration under advisement. Order, ECF No. 75. The Court requested that Attorney Heffernan forward on Mr. Franco's behalf any motions that he wished the Court to consider, regardless of whether Attorney Heffernan believed that they were sufficiently meritorious. *Id.*

Mr. Franco failed to provide any motions to Attorney Heffernan. Instead, on November 29, 2022, Attorney Heffernan filed a response to the Court's November 18 Order communicating

6

Mr. Franco's request that the Court schedule a hearing on his pending motion for consideration as soon as possible. Def. Counsel's Resp. to Court's Order, ECF No. 79.

On November 30, 2022, the Court issued an order continuing Mr. Franco's jury selection to February 6, 2023, and finding that the intervening period should be excluded from Speedy Trial Act calculations. Order, ECF No. 80. The Court also took note of Mr. Franco's request for a hearing and once again advised Mr. Franco to submit, through his counsel, any motions that he wished the Court to consider so that the Court could determine whether a hearing was necessary. *Id.*

On December 13, 2022, Mr. Franco submitted directly to the Court another motion to proceed *pro se*. Mot. to Proceed Pro Se, ECF No. 82.

The next day, on December 14, 2022, the Court denied Mr. Franco's motion for reconsideration and renewed motion to proceed *pro se*. Order, ECF No. 83. The Court advised Mr. Franco that any further motions to proceed *pro se* would be denied until Mr. Franco filed his proposed pretrial motions, as the Court had previously requested twice. The Court noted that it could not properly consider the issue of self-representation without reviewing the arguments Mr. Franco proposed to make in his motions. *See id.* The Court also authorized Mr. Franco to submit his proposed motions directly to the Court, without the assistance of his current counsel. *Id.*

On December 27, 2022, Mr. Franco filed his motions to suppress and motion to unseal, as well as an affidavit in support of his pretrial motions. First Mot. to Suppress; Mem. in Supp. of Def.'s Mot. to Suppress, ECF No. 85-1 ("Def.'s Mem."); First Franco Aff., ECF No. 85-2; Second Mot. to Suppress; Mot. to Unseal; Second Franco Aff.

On December 28, 2022, the Court directed the Government to respond to Mr. Franco's proposed motions. Order, ECF No. 89.

The same day, Attorney Heffernan filed a motion to withdraw as counsel for Mr. Franco on the ground that the attorney-client relationship had broken down irretrievably. Mot. to Withdraw as Counsel, ECF No. 90.

On January 19, 2023, Mr. Franco file a motion to attach exhibits to his motions. Mot. for Leave of Ct. to Attach Exs., ECF No. 91.[2]

On January 21, 2023, the Government filed a memorandum in opposition to Mr. Franco's motions. Opp'n.

## II.    STANDARD OF REVIEW

Under the exclusionary rule, evidence obtained illegally generally is not admissible at a criminal trial. *See, e.g.*, *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (in the context of a Fourth Amendment violation); *United States v. Anderson*, 929 F.2d 96, 98–99, 102 (2d Cir. 1991) (in the context of the voluntariness of a confession under the Fifth Amendment); *see also Terry v. Ohio*, 392 U.S. 1, 12–13 (1968) (noting that the exclusionary rule maintains "judicial integrity" and "has been recognized as a principal mode of discouraging lawless police conduct" (internal quotation marks omitted)).

Before trial, a criminal defendant may move to suppress evidence that was obtained illegally, including physical evidence that was seized in violation of the Fourth Amendment. *See* Fed. R. Crim. P. 12(b)(3)(C). On "a motion to suppress physical evidence, the burden of proof is initially on the defendant." *United States v. Breckenridge*, 400 F. Supp. 2d 434, 437 (D. Conn. 2005). "Once the defendant has established some factual basis for the motion, the burden shifts to the government to show that the search was lawful." *Id.* "The standard of proof on the party who carries the burden is a preponderance of the evidence." *Id.*; *see also United States v.*

---

[2] Mr. Franco's motion to attach exhibits is **GRANTED**, and the Court considered these exhibits in ruling on Mr. Franco's remaining motions.

*Echevarria*, 692 F. Supp. 2d 322, 332 (S.D.N.Y. 2010) ("On a motion to suppress evidence in a criminal trial, once [the defendant] has established a basis for his motion, the burden rests on the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers." (alteration in original) (internal quotation marks omitted)).

## III.  DISCUSSION

Mr. Franco argues in his motions that (1) evidence seized incident to his arrest should be suppressed because the arrest was unlawful; (2) evidence obtained as a result of the detention and search of the parcel delivered on March 7, 2022, should be suppressed because the search was unlawful; and (3) evidence seized from his residence should be suppressed because the search warrant was issued without probable cause.[3]

The Court will address each issue in turn.

### A.  The Lawfulness of Mr. Franco's Arrest

An officer may make a warrantless arrest when he or she has probable cause to believe a crime has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested."

---

[3] Mr. Franco also argues that officers improperly relied on an anticipatory warrant that was never triggered. *See* First Mot. to Suppress at 7–8. The government, however, notes that this anticipatory warrant authorized the search of the Main Street residence and that it was never executed because the parcel delivered on March 7, 2022, never entered the residence. Opp'n at 24–25; *see also* 3:22-mj-252 (RMS), ECF No. 19 (warrant returned unexecuted). The search of the Harbour Close Residence was authorized by two other search warrants that were executed. *See* 3:22-mj-252 (RMS), ECF Nos. 20, 22 (warrants returned executed). Mr. Franco does not assert that the Main Street residence was searched, nor does he identify any evidence allegedly seized from that residence. Accordingly, the Court rejects this argument.

Finally, Mr. Franco seeks to unseal the affidavit used to obtain the warrant obtained on March 6, 2022, authorizing a limited search of the Harbour Close Residence. Mot. to Unseal. The Government notes that it filed an unsealed redacted version of this affidavit on March 7, 2022, and that this affidavit was provided to Mr. Franco's counsel as part of the Government's discovery. *See* Opp'n at 29; Ex. A to Gov't's Mot. to Unseal, 3:22-mj-252 (RMS), ECF No. 18-1 (redacted affidavit). Accordingly, Mr. Franco's motion to unseal is **DENIED as moot**.

*United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004). The probable-cause standard is "a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008) (quoting *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)). A court determines whether probable cause existed based upon the "reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152.

Here, Mr. Franco argues that officers lacked sufficient information linking him to criminal activity to establish probable cause at the time of his arrest. Mr. Franco asserts that he never left the vehicle when Ms. Fox went to pick up the parcel and that officers did not observe him engaging in any criminal activity that day. *See* First Mot. to Suppress at 5–6.

The Government argues in response that, over the course of their months-long investigation into Mr. Franco and Ms. Fox, officers had observed patterns of activity suggesting that Mr. Franco and Ms. Fox were working together to receive parcels at various addresses as part of a narcotics trafficking conspiracy. *See* Opp'n at 23. According to the Government, Mr. Franco's and Ms. Fox's conduct on the day of the arrest confirmed officers' suspicions of a narcotics trafficking conspiracy. *See id.* Furthermore, the Government contends, Mr. Franco's apparent attempt to flee demonstrated his consciousness of guilt. *Id.*

The Court agrees.

In support of his motion, Mr. Franco cites cases holding that mere physical proximity to a suspected crime or mere association with others engaged in criminal activity is insufficient to establish probable cause. *See United States v. Ceballos*, 654 F.2d 177, 185 (2d Cir. 1981) (exiting the house of a suspected drug dealer carrying a brown paper bag did not provide

probable cause); *United States v. Ingrao*, 897 F.2d 860, 863–864 (7th Cir. 1990) ("[P]hysical proximity to a suspected crime, without other indicia of Ingrao's involvement, is insufficient to support a finding of probable cause."); *United States v. Hillison*, 733 F.2d 692, 697 (9th Cir. 1984) ("[T]o find probable cause based on association with persons engaging in criminal activity, some additional circumstances . . . must be shown"); *United States v. Everroad*, 704 F.2d 403, 407 (8th Cir. 1983) ("[P]hysical proximity to a crime combined simply with a brief association with a suspected criminal—when there is no other unlawful or suspicious conduct by any party involved—cannot support a finding of probable cause"); *United States v. Barber*, 557 F.2d 628 (8th Cir. 1977) ("At the time the officers arrested Keller, they knew only that he had driven Barber to the liquor store, and was waiting in the car just outside the store as Barber was apprehended."). But unlike the cases cited by Mr. Franco in which courts granted suppression, the officers here relied on far more than Mr. Franco's presence at the scene or a brief association with Ms. Fox to establish probable cause. This case is more like *Hillison*, in which the court denied suppression because the continued relationship between the suspects could not "be fairly termed 'mere propinquity.'" 733 F.2d at 697.

Instead, the pattern of behavior that investigators had observed over the months preceding the arrest would permit an officer of reasonable caution to believe that Mr. Franco and Ms. Fox were engaged in a narcotics trafficking conspiracy together. *See Delossantos*, 536 F.3d at 161 ("[S]ome patterns of behavior which may seem innocuous enough to the untrained eye may not appear so innocent to the trained police officer who has witnessed similar scenarios numerous times before." (alteration in original) (internal quotation marks omitted)). On multiple occasions, officers had observed Mr. Franco and Ms. Fox driving together to and from the Main Street address and the Glen Haven Road address to pick up parcels suspected of containing

narcotics. *See* Maynard Aff. ¶¶ 23–27, 30, 44. The discovery of fentanyl and cocaine in the parcel delivered on March 7, 2022, permitted officers to reasonably infer that similar prior parcels had also contained narcotics. *See id.* ¶ 16.

Even though it was Ms. Fox who went to pick up the parcel delivered on March 7, 2022, the observed coordination between Mr. Franco and Ms. Fox gave officers probable cause to believe that the two were engaged in a conspiracy together. As the Second Circuit has noted, "it is reasonable to infer that if one person in a vehicle is engaged in drug dealing, so are the other passengers, because drug dealing is 'an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.'" *Delossantos*, 536 F.3d at 159 (quoting *Pringle*, 540 U.S. at 373). In fact, the Second Circuit held in *Delossantos* that police had probable cause to arrest the driver of a vehicle when they had observed the passenger selling narcotics and the driver had driven the passenger "on multiple trips, including the final trip to the drug-buy location." *Id.* at 157, 159.

The officers' belief that Mr. Franco and Ms. Fox were working together was reinforced by the pair's prior history of narcotics trafficking activities. The Second Circuit has noted that evidence of prior similar criminal activity, although far from dispositive of probable cause, is relevant in evaluating the totality of the circumstances. *Stansbury v. Wertman*, 721 F.3d 84, 92 (2d Cir. 2013) (holding that the district court should have considered a shoplifting suspect's prior arrest for grand larceny "as part of the totality of circumstances," even if the prior arrest did not "yield[] a significant step towards establishing probable cause"). Here, Mr. Franco and Ms. Fox had both been arrested in 2015 as a result of the same investigation into narcotics trafficking. Maynard Aff. ¶ 10. A DEA confidential source had also purchased suspected narcotics from Mr. Franco and Ms. Fox together in April 2021. *Id.* ¶ 37.

Finally, Mr. Franco's apparent attempt to flee by moving from the passenger seat to the driver's seat of the Porsche provides further support for the officers' belief that Mr. Franco was or had been engaged in a crime. *See United States v. Martinez-Gonzalez*, 686 F.2d 93, 100 (2d Cir. 1982) ("The event that transformed the agents' reasonable suspicion into probable cause was Martinez's own manifestation of guilt evidenced by his flight from the agents back into the apartment when the agents approached him to talk to him.").

Accordingly, the Court concludes that officers had probable cause to arrest Mr. Franco on March 7, 2022.

**B.  The Search of the Parcel Delivered on March 7, 2022**

In a memorandum attached to his first motion to suppress, Mr. Franco argues that the detention and eventual search of the parcel delivered on March 7, 2022, violated the Fourth Amendment. Def.'s Mem. at 2. Thus, he contends, all evidence obtained as a result of that search should be suppressed. *See id.*

In order to seek relief from an unconstitutional search, a party must first establish "a cognizable Fourth Amendment interest in the place searched." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). This interest must be "personal"; a party cannot "vicariously" assert Fourth Amendment rights on behalf of another. *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 132 n.1 (1978). Thus, "a defendant seeking suppression of evidence found without a search warrant must show that he had a reasonable expectation of privacy in the place or object searched." *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017). "One need not be the owner of the property for his privacy interest to be one that the Fourth Amendment protects, so long as

he has the right to exclude others from dealing with the property." *United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018).

Here, Mr. Franco argues that he has a subjective expectation of privacy, even though he never took possession of the parcel and it was addressed to a different person who resides at another address. *See* Mem. at 5 (citing *United States v. Allen*, 741 F. Supp. 15 (D. Me. 1990)). According to Mr. Franco, the Government alleges that he possessed the package and had an ability to accept the package, and these allegations are sufficient to demonstrate an expectation of privacy in the package. *See id.*

In response, the Government notes that the package was neither sent nor addressed to Mr. Franco and that he never possessed it up the time it was detained and searched. *See* Opp'n at 25. Thus, the Government argues, Mr. Franco may establish standing only by asserting that he was the true intended recipient of the parcel. *See id.* Because he has not done so, the Government concludes, Mr. Franco does not have standing to challenge the search of this parcel. *See id.*

The Court agrees.

"One who is not the sender or addressee may challenge a search or seizure of mail if other factors show she had a subjective and objectively reasonable expectation of privacy." *United States v. Barrios*, No. 95-cr-524 (LLS), 1995 WL 728440, at *3 (S.D.N.Y. Dec. 8, 1995), *aff'd*, 210 F.3d 355 (2d Cir. 2000). These other factors include "[a] claim of ownership of the mail's contents," "the ability to regulate access to the package," or "a possessory interest at the time of the search or seizure" even if the party disclaims ownership. *Barrios*, 1995 WL 728440, at *3.

Here, Mr. Franco was neither the sender nor the addressee of the parcel, and he has not demonstrated any additional factor that might give rise to an expectation of privacy. In the

affidavits submitted with his motions, Mr. Franco does not claim that he owned the package, that

he had the ability to regulate access to the package, or that he possessed the package at the time it

was detained and searched. In fact, he notes specifically that he never exited the vehicle when

Ms. Fox retrieved the parcel on March 7, 2022. First Franco Aff. ¶ 3.

Instead, Mr. Franco relies on what he characterizes as the Government's allegation that

he had a possessory interest in the parcel. But as noted above, the party seeking suppression

bears the burden of establishing that he had a reasonable expectation of privacy in an object, and

courts in the Second Circuit have "routinely rejected efforts by defendants to establish Fourth

Amendment standing based on the Government's allegations or evidence." *United States v.*

*White*, No. 17-cr-611 (RWS), 2018 WL 4103490, at *8 (S.D.N.Y. Aug. 28, 2018) (citing *United*

*States v. Watson*, 404 F.3d 163, 166–67 (2d Cir. 2005)).

Because he has not established a claim of ownership, Mr. Franco's reliance on *United*

*States v. Allen* fails. In that case, as in this one, the court considered a motion to suppress

evidence obtained through a search of mail that was addressed to someone other than the

defendant. *See Allen*, 741 F. Supp. at 15. But in granting the motion, the court in *Allen*

specifically relied on the fact that "[t]he defendant does claim ownership of both the envelope

and its contents." *See id.* Without this additional factor, Mr. Franco has not established that he

had a reasonable expectation of privacy in the parcel.

Accordingly, the Court concludes that Mr. Franco lacks standing to challenge the

detention and search of the parcel delivered to the Main Street address on March 7, 2022.[4]

---

[4] Because Mr. Franco lacks standing, the Court need not reach the remaining issues raised by Mr. Franco, such as whether the detention of the parcel and its examination by a narcotics detection dog, both of which occurred before investigators obtained a search warrant, violated the Fourth Amendment.

**C.  The Validity of the Harbour Close Residence Search**

On March 7, 2022, after arresting Mr. Franco and Ms. Fox, investigators executed a

search warrant at the Harbour Close Residence. *See* Opp'n at 16; 3:22-mj-252 (RMS), ECF No.

20 (warrant returned executed). This warrant, obtained the day before from Judge Spector,

authorized a search of the residence for USPS parcels and related records, as well as any

computer equipment or digital devices that could be used to track USPS packages or in other

ways commit or further narcotics trafficking. *See* March 6 Search Warrant. Upon executing this

warrant, investigators observed USPS parcels and narcotics in plain view, 3:22-mj-252 (RMS),

ECF No. 20, at which point they obtained a warrant for a broader search of the premises, 3:22-

mj-252 (RMS), ECF No. 11. In his motion, Mr. Franco challenges only the basis for the initial

warrant issued on March 6. *See* Second Mot. to Suppress at 4–5.

The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that

"no Warrants shall issue, but upon probable cause, supported by Oath." U.S. Const. amend. IV.

As already discussed in the context of the standard for warrantless arrests, "probable cause is a

fluid concept—turning on the assessment of probabilities in particular factual contexts—not

readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232

(1983). In evaluating a search warrant application "[t]he task of the issuing magistrate is simply

to make a practical, common-sense decision whether, given all the circumstances set forth in the

affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be

found in a particular place." *Id.* at 238.

Once a search warrant has issued, "the duty of a reviewing court is simply to ensure that

the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at

238–39 (alteration in original); *see also United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993)

("A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists.").

Mr. Franco argues that officers had not established any connection between his residence and illegal activity at the time they obtained the warrant. *See* Second Mot. to Suppress at 4. He relies on *United States v. Gomez*, 652 F. Supp. 461 (E.D.N.Y. 1987), in which the court held that an investigating agent could not establish probable cause for a search "based solely on the agent's expert opinion" regarding what might be sufficient to link a suspect's residence to his criminal activity when "there is nothing to connect the illegal activities with the arrested person's apartment." 652 F. Supp. at 463; *see also* Second Mot. to Suppress at 5.

In response, the Government notes that officers had evidence that an electronic device inside the residence had been used to track a parcel containing narcotics. *See* Opp'n at 26. And according to the Government, officers could reasonably infer that parcels that had been tracked from the Harbour Close Residence and later picked up and taken away from the residences at which they were delivered would have been brought back to the Harbour Close Residence. Thus, the Government concludes, officers had probable cause to conduct a limited search for the objects identified in the warrant.

The Court agrees.

Unlike in *Gomez*, the investigators in this case did not rely solely on an agent's assertion of expertise to link Mr. Franco's suspected illegal activity to his residence. As the Government points out, investigators had evidence that electronic devices located at the Harbour Close Residence had been used to track suspicious parcels, including one known to contain narcotics. *See* Opp'n at 26. Thus, it was reasonable for investigators to believe that these devices had been used in furtherance of narcotics trafficking and could be found at the Residence. Although the

inferential link between the parcels themselves and the residence was weaker, given that investigators never witnessed Mr. Franco or Ms. Fox return to the Harbour Close Residence with the parcels, officers could reasonably have concluded that the parcels likely were taken back to the residence where the devices were located.[5] Thus, under the totality of the circumstances, the search warrant authorized on March 6, 2022, was supported by sufficient evidence to demonstrate probable cause. *See United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987) (distinguishing *Gomez* when an agent's expert opinion, "when viewed together with the other evidence in the government's affidavits," sufficiently established "probable cause to believe that evidence of prior criminal activity was located in [the defendants'] homes"), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).

Accordingly, the Court concludes that the search of the Harbour Close Residence on March 7, 2022, did not violate the Fourth Amendment.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that officers had probable cause to arrest Mr. Franco and to search the Harbour Close Residence on March 7, 2022, and that Mr. Franco lacks standing to challenge the detention and search of the parcel delivered to the Main Street address on that date.

Accordingly, Mr. Franco's motions to suppress are **DENIED**, and his motion to unseal is **DENIED as moot**.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of February, 2023.

---

[5] Even if the officers lacked probable cause to search for USPS parcels at the Harbour Close Residence, the Court would nonetheless find that the search fell within the "good-faith exception" to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984). This is not a case in which the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (internal quotation marks omitted). In *Gomez* itself, the court held that the good-faith exception applied even though the evidence linking the illegal activity and the defendant's residence in that case was weaker than it is here. *See* 652 F. Supp. at 464.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE