# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>    v.<br><br>WILLIE FRANCO,<br>    *Defendant.* | No. 3:22-cr-43-1 (VAB) |

## RULING AND ORDER ON MOTIONS IN LIMINE

Willie Franco ("Mr. Franco" or "the Defendant") has been charged in a multi-count Second Superseding Indictment with crimes related to possession and distribution of narcotics. *See* Second Superseding Indictment, ECF No. 169 (Feb. 27, 2024) ("Second Superseding Indictment").

In advance of Mr. Franco's trial, the Government has filed various motions *in limine* to allow opening statements, exempt a witness from sequestration, notice the Court of its intention to introduce criminal records of the Defendant, notice the Court of its intention to introduce self-authenticating documents, admit expert testimony, authenticate exhibits related to drugs seized during a search of the Defendant's residence, notice the Court of its intention to introduce video and audio evidence, and notice the Court of its intention of introducing other "bad act" evidence. *See* Government's Motions *in Limine*, ECF No. 232 (Jan. 17, 2025) ("Mot.").

For the reasons outlined below, these motions *in limine* have been addressed as follows:

The Government's motion *in limine* number one, moving for opening statements, is **DENIED**.

The Government's motion *in limine* number two, regarding witness sequestration and exemption from sequestration of U.S. Postal Inspector Geoff Maynard, is **GRANTED**.

1

The Government's motion *in limine* number three, regarding Mr. Franco's criminal history, is **DENIED** without prejudice to renewal at trial solely for the purpose of the introduction of criminal records to prove the elements of Count Four, consistent with this Ruling and Order.

The Government's motion *in limine* number four, regarding the self-authentication of records, is **GRANTED**, consistent with this Ruling and Order.

The Government's motion *in limine* number five, regarding the admission of expert testimony from Special Agent David Carney of the Federal Bureau of Investigation, is **DENIED** without prejudice to renewal at trial.

The Government's motion *in limine* number six, regarding the authentication of drug exhibits, is **DENIED** without prejudice to renewal at trial.

The Government's motion *in limine* number seven, noticing the Court of video evidence, is **DENIED** without prejudice to renewal at trial.

The Government's motion *in limine* number eight, noticing the Court of potential other bad act evidence, is **DENIED** without prejudice to renewal at trial.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

This case involves an alleged conspiracy between Willie Franco and Daniella E. Fox to possess with intent to distribute fentanyl and cocaine and Willie Franco allegedly unlawfully possessing a firearm in furtherance of this conspiracy. *See* Second Superseding Indictment.

### B.  Procedural Background

On March 15, 2022, a grand jury returned an indictment charging Mr. Franco and Daniella E. Fox ("Ms. Fox") with Conspiracy to Possess with Intent to Distribute Fentanyl and

Cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(vi) and 841(b)(1)(B)(ii); Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi); and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii). Indictment, ECF No. 16.

On April 25, 2022, Mr. Franco appeared for an arraignment before U.S. Magistrate Judge Robert M. Spector. *See* Min. Entry, ECF No. 29. He pled not guilty. *Id*.

On November 1, 2022, a grand jury returned a superseding indictment charging Mr. Franco and Ms. Fox with Conspiracy to Possess with Intent to Distribute Fentanyl and Cocaine in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(A)(vi), 841(b)(l)(B)(ii), and 846; Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(A)(vi);and charging just Mr. Franco with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(l)(A)(i), and Unlawful Possession of a Firearm by a Felon in violation of 18 U.S.C. §§ 922(g)(l) and 924(a)(2). Superseding Indictment, ECF No. 56.

On November 14, 2022, Mr. Franco appeared again for an arraignment before U.S. Magistrate Judge Robert M. Spector. *See* Min. Entry, ECF No. 72. He pled not guilty. *Id.*

On March 15, 2023, the Court conducted a hearing to consider Mr. Franco's request to represent himself and granted that request and appointed Attorney Joseph Patten Brown as standby counsel. Order, ECF No. 112.

On February 27, 2024, a grand jury returned a second superseding indictment charging solely Mr. Franco with Conspiracy to Possess with Intent to Distribute Fentanyl and Cocaine in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(1)(A)(vi), 841(b)(l)(B)(ii), and 846; Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(A)(vi); Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. §

924(c)(l)(A)(i); and Unlawful Possession of a Firearm by a Felon in violation of 18 U.S.C. §§

922(g)(l) and 924(a)(2). Second Superseding Indictment.

On March 7, 2024, Mr. Franco appeared for another an arraignment before U.S.

Magistrate Judge Robert M. Spector. *See* Min. Entry, ECF No. 176. He pled not guilty. *Id.*

On September 22, 2024, the Government moved *in limine* for admission of self-

authenticating documents and evidence. *See* Mot. *in Limine* and Notice of Intent to Admit Self-

Authenticating Records, ECF No. 195.

On October 11, 2024, Mr. Franco responded in opposition to the Government's motion *in*

*limine*. Mem. in Opp'n, ECF No. 201.

On October 28, 2024, the Government replied to Mr. Franco's opposition to its motion *in*

*limine*. Mem. in Support, ECF No. 207.

On January 17, 2025, the Government filed an omnibus motion in *limine* moving to allow

opening statements, exempt a witness from sequestration, notice the Court of its intention to

introduce criminal records of the Defendant, renew its notice to the Court of its intention to

introduce self-authenticating documents, admit expert testimony, authenticate exhibits related to

drugs seized during a search of the Defendant's residence, notice the Court of its intention to

introduce video and audio evidence, and notice the Court of its intention of introducing other

"bad act" evidence. Mot.

The final pre-trial conference occurred on February 13, 2025. Notice, ECF No. 244 (Jan.

30, 2025). Jury selection is scheduled to begin on February 18, 2025, with trial to begin

immediately thereafter. Order, ECF No. 200 (Sept. 24, 2024).


II.    **STANDARD OF REVIEW**

Motions *in limine* provide district courts the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).

A court should only exclude evidence on motions *in limine* if the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport Nat'l Bank*, No. 09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions are placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

## III.  DISCUSSION

### A.  The Government's Motions *in Limine*

The Government seeks to: (1) allow opening statements, (2) exempt a witness from sequestration, (3) notice the Court of its intention to introduce criminal records of the Defendant, (4) notice the Court of its intention to introduce self-authenticating documents, (5) admit expert testimony, (6) authenticate exhibits related to drugs seized during a search of the Defendant's residence, (7) notice the Court of its intention to introduce video and audio evidence, and (8) notice the Court of its intention of introducing other "bad act" evidence. Mot.

The Court will address each of these motions in turn.

### 1.  The Motion to Allow Opening Statements

Opening statements function merely to "state what evidence will be presented," rather than as "an occasion for argument." *U.S. v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring).  There are no federal statutes or rules regarding opening statements, and existing case law regarding opening statements does not discuss the issue in constitutional terms. *U.S. v. Salovitz*, 701 F.2d 17, 20 (2d Cir. 1983). For these reasons, the Second Circuit has held that "the making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge." *Id.*

The Government requests that the Court allow the parties to give opening statements in this case because "[g]iven the anticipated length of the trial – one week – the various types of evidence the Government expects to introduce (including recorded video), and the varying types of charges, opening statements will be helpful to put the evidence into perspective and clarify the issues the jury must decide." Mot. at 1

The Court disagrees.

As the Second Circuit has held, "the making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge" in criminal cases because there is no constitutional right for defendants in criminal cases to give opening statements at trial. *Salovitz*, at 21 (finding that there was no abuse of discretion where district court judge denied criminal defendant's request to have opening statements at his trial). Because the United States Constitution does not require that defendants in a criminal trial be given the opportunity to give opening statements, the Court exercises its discretion and denies the Government's motion to have opening statements in the trial of this case.

The parties are, however, free to confer and agree on a jointly stipulated statement regarding the case that the Court will read to the jury before the Government begins its presentation of its case.

Accordingly, the Court will deny the Government's motion for opening statements, and instead will permit a statement of the case to be read to the jury.

### 2. The Motion to Exempt U.S. Postal Inspector Geoff Maynard from Witness Sequestration

Federal Rule of Evidence 615 provides that "[a]t a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony." Rule 615, however, does not authorize exclusion of a "person whose presence a party shows to be essential to presenting the party's claim or defense," or a person authorized by statute to be present. Fed. R. Evid. 615(a)(1), (3), (4).

The Second Circuit has held that district courts have "discretion to exempt the government's chief investigative agent from sequestration, and it is well settled that such an exemption is proper under Rule 615(2), deeming the agent-witness a 'representative' of the government." *U.S. v. Rivera*, 971 F.2d 876, 889 (2d Cir. 1992) (citations omitted). "Since the chief investigating agent may be of significant help to the prosecution during the course of a trial, the trial court has discretion to make an exception to the general rule of sequestration of witnesses in his case." *U.S. v. Pellegrino*, 470 F.2d 1205, 1208 (2d Cir. 1972); *see also U.S. v. Lee*, 834 F.3d 145, 162 (2d Cir. 2016) ("[T]he district court has 'discretion to exempt the government's chief investigative agent from sequestration, and it is well settled that such an exemption is proper under Rule 615[b], deeming the agent–witness a 'representative' of the government.'" (quoting *Rivera*, 971 F.2d at 889) (alteration in original)).

7

The Government argues that Postal Inspector Maynard should be excluded from sequestration since "the presence of Inspector Maynard at trial is necessary to assist in the presentation of the substantial evidence and to assist in addressing developments at trial, including but not limited to the cross-examination of defense witnesses," because "Postal Inspector Maynard served as the primary investigative agent throughout the investigation and participated in nearly every aspect of it." Mot. at 3. The Government further argues that "it will likely present Inspector Maynard as its first witness curtailing almost all concerns about his testimony being tailored based on testimony he will see; after all, he will not have seen any testimony before testifying initially." *Id.*

The Court agrees.

Inspector Maynard served as the Government's primary investigative agent, and the Government has indicated that Inspector Maynard will likely testify first and therefore eliminate potential concerns over improper tailoring of testimony; there is no reason to deny this motion. *See e.g.*, *Lee*, 834 F.3d at 162 ("[T]he district court has 'discretion to exempt the government's chief investigative agent from sequestration, and it is well settled that such an exemption is proper under Rule 615[b], deeming the agent–witness a 'representative' of the government.'" (quoting Rivera, 971 F.2d at 889) (alteration in original)); *Geders v. United States*, 425 U.S. 80, 87 (1976) ("The aim of ... the practice of sequestering witnesses ..., is twofold. It exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid." (citation omitted)); *United States v. Donald*, No. 3:21-CR-8 (VAB), 2023 WL 6958797, at *32 (D. Conn. Oct. 20, 2023) (granting the Government's motion to exclude an FBI Special Agent from sequestration when they participated substantially in the case's evidence gathering, and the Defendants did "not respond[]

to the Government's motion . . .[nor] object during the motions hearing"); *United States v. Ray*, 589 F. Supp. 3d 298, 301 (S.D.N.Y. 2022) (granting an exception to sequestration to an IRS agent who was "critical to the five counts charged" and whose testimony was "not susceptible to tailoring").

Accordingly, the Court will grant the Government's motion.

### 3. The Motion Regarding Criminal History

The Government has notified the Court of its intention to introduce various parts of Mr. Franco's records including "certified records of convictions, testimony regarding when he was released from federal prison, and admissions he makes in certain video recordings he took," in order to prove (1) "the elements of Count Four" and (2) "the allegations in the Section 851 Information[.]" Mot. at 4

The Court will address both parts of this motion *in limine* in turn.

### a.    The Introduction of Criminal Records to Prove the Elements of Court Four

The Court must admit proof of a criminal defendant's criminal record when that proof is necessary to prove the element of Section 922(g)(1). *See United States v. Montanez*, No. 23-CR-186 (NGG), 2024 WL 4582387, at *12 (E.D.N.Y. Oct. 25, 2024), *supplemented*, No. 23-CR-186 (NGG), 2024 WL 4607479 (E.D.N.Y. Oct. 29, 2024) ("Of course, the fact of Montanez's prior felony conviction is an essential element of the Section 922(g) (1) charge. Thus, the court must—and will—admit proof of the fact of his conviction for the purpose of proving that element of Section 922(g)(1).") (citing *United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) ("The fact that Gilliam was convicted of a felony is an intrinsic issue in a § 922(g)(1) trial, and proof of a prior conviction is necessary for the offense to be substantiated.")).

The Government argues that, while it intends to introduce potentially prejudicial evidence of Mr. Franco's prior criminal convictions in order to prove the elements of Court Four, it is "willing to so stipulate regarding Franco being a convicted felon at the time of the currently alleged offenses, that he knew he was a convicted felon, that he was previously convicted of the serious drug felony alleged, for which he served more than 12 months of imprisonment, and for which he was released from serving that term of imprisonment within 15 years of the commencement of the offenses charged in Counts One and Two of this Second Superseding Indictment" as an "an appropriate substitution for this type of potentially prejudicial [conviction] evidence" under *Old Chief v. United States*, 519 U.S. 172 (1997). Mot. at 4.

The Court agrees that this stipulation would be appropriate, if Mr. Franco is willing to consent to it.

Mr. Franco's prior conviction is a necessary element of Count Four, a 922(g)(1) charge. *See* Second Superseding Indictment at 3; *Gilliam*, 994 F.2d at 100 ("The fact that Gilliam was convicted of a felony is an intrinsic issue in a § 922(g)(1) trial, and proof of a prior conviction is necessary for the offense to be substantiated."). However, the "underlying facts of the prior conviction ... are completely irrelevant[,]" and "[t]he jury has no need to know the nature of the prior conviction; all that it needs to know is that there was a prior conviction sufficient to sustain that element of the crime." *Id.* at 103. In *Old Chief*, the Supreme Court recognized that:

> distinctions among generic felonies do not count for [Section 922(g)(1)] purpose[s]; the fact of the qualifying conviction is alone what matters under the statute. A defendant falls within the category simply by virtue of past conviction for any qualifying crime ranging from possession of short lobsters to the most aggravated murder. The most the jury needs to know is that the conviction admitted by the

defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions.

519 U.S. 172, 191-92 (1997).

The Government's proposed stipulation limits the introduction of the underlying facts of the crime would be appropriate and reduce the potential prejudice that would occur by introducing the criminal conviction in its entirety—of course, Mr. Franco must agree to such a stipulation. *See Gilliam*, 994 F.2d at 103 ("[I]ntroduction of the underlying facts of the prior conviction would be far more prejudicial than probative where the defendant is willing to stipulate to the simple fact of the prior conviction."); *see cf. Montanez*, 2024 WL 4582387, at *12 ("[W]hen the defendant offers to stipulate to the fact of his prior felony conviction, and the prior conviction is for an offense likely to support conviction on some improper ground, it would be an abuse of discretion for the court to reject the defendant's proposed stipulation.") (internal quotation marks omitted).

Accordingly, the Court will reserve judgement on this issue unless and until the parties have agreed upon the language of a stipulation.

        b.    The Introduction of Criminal Records to Prove Section 851 Information

"The federal narcotics laws require that the sentence for a defendant convicted of certain narcotics offenses be increased if the defendant has a prior felony narcotics conviction. . . As a condition precedent to the court's imposition of an enhanced penalty . . . , the United States Attorney must-prior to trial or plea-file and serve on the defendant an information 'stating in writing the previous convictions to be relied upon.'" *United States v. Morales*, 560 F.3d 112, 113 (2d Cir. 2009) (quoting 21 U.S.C. § 851(a)(1)).

"If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b).

The Government argues that it intends to prove the allegations in its Section 851 Information by introducing evidence of Mr. Franco's "certified records of convictions, testimony regarding when he was released from federal prison, and admissions he makes in certain video recordings he took." Mot. at 4; *see also* Second Superseding Indictment at 4.

The Court agrees, in part.

In light of the prejudicial nature of past criminal convictions and the lack of necessity of introducing this information during trial since the penalty enhancements only apply to those "convicted of certain narcotics offenses," *Morales*, 560 F.3d 112, 113 (2d Cir. 2009) (quoting 21 U.S.C. § 851(a)(1)), the Court will not allow the Government to introduce evidence of Mr. Franco's prior narcotic convictions for the purpose of proving their Section 851 Information during trial but instead will reserve the introduction of that information for after trial in the event that Mr. Franco is convicted.[1]

Accordingly, this motion will be granted in part, and denied in part, to the extent that the Government sought to introduce this evidence during the trial, as opposed to after it.

---

[1] Under similar, although somewhat different, circumstances, this Court previously did not allow the introduction of Section 851 evidence during trial in *U.S. v. Best*. *See United States v. Best*, No. 3:20-CR-28 (VAB), 2022 WL 4008087, at *7 n.1 (D. Conn. Sept. 2, 2022) ("Several Defendants submitted motions arguing that references to the Section 851 notices should not be allowed prior to any potential guilty verdict. In light of the Court's practice of not referring to the Indictment during the trial and the Government's representation that it does not plan to offer any evidence related to the Section 851 notices, the [514], [836], [864], and [886] motions, as they relate to Section 851 information, will be denied as moot.").

### 4. The Motion Regarding Self-Authenticating Documents

Under Federal Rule of Evidence 902, certain items of evidence are "self-authenticating," meaning that "they require no extrinsic evidence of authenticity" to be admitted. Fed. R. Evid. 902.

Under Federal Rule of Evidence 902(4) "[s]tate-court records including transcripts of proceedings are [also] 'self-authenticating' . . ." *In re Marks*, No. 23-11594 (DSJ), 2024 WL 5113120, at *5 (Bankr. S.D.N.Y. Dec. 13, 2024) (citing *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 71 (2d Cir. 2006) (citing Fed. R. Evid. 902(4); *United States v. Lumumba*, 794 F.2d 806, 815 (2d Cir. 1986))). "A copy of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct by: (A) the custodian or another person authorized to make the certification; or (B) a certificate that complies with Rule 902(1), (2), or (3), a federal statute, or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(4).

Under Federal Rule of Evidence 902(11), domestic records are self-authenticating if they "meet[] the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(11). Rule 803(6) deems business records admissible if they are accompanied by a certification of a custodian or other qualified person showing that: (A) "the record was made at or near the time by—or from information transmitted by—someone with knowledge;" (B) "the record was kept in the course of a regularly conducted activity" of the business; and (C) "making the record was a regular practice of that activity." Fed. R. Evid. 803(6).

Rules 902(13) and 902(14) provide that "[a] record generated by a process or system that produces an accurate result ..." and "[d]ata copied from an electronic device, storage medium, or file ...", respectively, that are "shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12) ..." are self-authenticating. Fed. R. Evid. 902(13)–(14). Both Rule 902(13) and 902(14) also require the "proponent ... meet the notice requirements of Rule 902(11)." *Id.* In these circumstances, the "adverse party [must be given] reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." Fed. R. Evid. 902(11).

The Government seeks to introduce (1) certified convictions, (2) device handling and tracking records, and (3) Enterprise Rental Car business records as self-authenticating and requests that the Court grant this motion *in limine* and find that the documents are self-authenticating. *See* Mot. in Limine and Notice of Intent to Admit Self-Authenticating Records, ECF No. 195.

Mr. Franco objects to the introduction of the LG Aristo cell phone records and prior act, arrest, and conviction records as violations of the Fifth, Sixth, and Fourteenth Amendments and his Due Process rights. *See* Mem. in Opp'n, ECF No. 201.

The Government argues in response that its motion "concerned authentication only, not admissibility of the documents otherwise. The defendant's right to object to the documents offered on other evidentiary grounds – such as relevance or unfair prejudice – would be preserved. The only question the Government requested (and now requests) that the Court resolve is whether the documents are what they purport to be." Mem. in Support, ECF No. 207 at 1.

The Court agrees.

Because the Government is only seeking a ruling as to whether the documents are self-authenticating, the Court can address that issue now, and reserve judgment on the admissibility of the documents, an issue that will depend on why the Government is seeking to introduce these documents and for which reasons Mr. Franco objects to their introduction. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) ("[C]ourts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal citation omitted).

a.  The Certified Conviction Records

The Governments seeks to introduce "certified copies from the State of Connecticut Superior Court Records Center as well as certified copies of transcripts and certified copies of the conviction and judgment from the United States District Court for the District of Connecticut. . . . [that] are signed by individuals authorized to make a certified copy and the documents bear appropriate seals and signatures."

If the Government does introduce such documents, they would be self-authenticating. *See* Fed. R. Evid. 902(4) ("A copy of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct by: (A) the custodian or another person authorized to make the certification."); *Marks*, 2024 WL 5113120, at *5 ("State-court records including transcripts of proceedings are [also] self-authenticating.") (internal quotation marks omitted) (citing *Ball*, 451 F.3d at 71); *Ball*, 451 F.3d at 71 (finding that a transcript from a federal bankruptcy court "which includes a certification by the court reporter, is self-authenticating").

b.  The Device Tracking and Handling Records

The Government seeks to introduce videos and other records obtained from an LG Aristo cell phone that were extracted by Cellebrite Advanced Services ("CAS"), a "private business that has developed software to extract data from mobile devices." *See* Mot. *in Limine* and Notice of Intent to Admit Self-Authenticating Records, ECF No. 195 at 4. This data is also "accompanied by a Device Handling and Tracking Record prepared, certified, and signed by Andrei Stanciulescu, a CAS Operations Specialist." *Id.* at 5. The Government submits that "[t]he Device Handling and Tracking Record also explicitly provides 'Pursuant to the Federal Rules of Evidence, this certification constitutes a record of regularly conducted activity. This certification is a regular practice, made at or near the time of services performed by Cellebrite in the ordinary course of business by Cellebrite personnel with knowledge of these matters.'" *Id.* at 6.

The Government also states that "The data created, including the videos the Government intends to introduce, is '[d]ata copied from an electronic device.' The Device Handling and Tracking Record states that the media sent out was data that had been extracted (and had not been modified) from an electronic device – namely, the LG Aristo cell phone. It was authenticated by a process of digital identification as reflected by the reference to a 'verification hash value for each resulting extraction file.'" *Id.*

Finally, the Government states that "The data record . . . was produced in native format to counsel for the defendant on July 14, 2022, . . . it was sent to him at Wyatt on September 11, 2023, . . . [and] [t]he one-page Device Handling and Tracking Record, the certification of the data, was produced to Franco on February 15, 2024." *Id.* at 7.

Since the Government has noted that the data from the LG Aristo was "successfully accessed . . . and extracted[,]" "using a custom solution developed by Cellebrite[,]" that

generated a custodian-certified Device Handling and Tracking Record, *id.* at 5, if the Government produces that record which affirms that the extraction record was made "at or near the time by someone with knowledge," was a "regularly conducted activity," and the certification was "a regular practice of that activity," *id.* at 6, then the Federal Rules of Evidence 902(13)–(14) will be satisfied and the records can be deemed self-authenticating.[2] *See* Fed. R. Evid. 902(13)–(14) (stating that "[a] record generated by a process or system that produces an accurate result ..." and "[d]ata copied from an electronic device, storage medium, or file ...", respectively, that are "shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12) ..." are self-authenticating); Fed. R. Evid. 902(11) ("The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court."); Fed. R. Evid. 803(6)(A)–(C) ("(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity . . ."); *see also United States v. Otufale*, 740 F. Supp. 3d 233, 249 (E.D.N.Y. 2024) (allowing under Rule 902(13) "the Government [to] authenticate . . . electronic records . . . using records custodian certifications without calling the records custodians to testify"); *United States v. Terranova*, No. 23-CR-516

---

[2] The Government has provided copies of the data and the certification record to Mr. Franco. *See* Mot. *in Limine* and Notice of Intent to Admit Self-Authenticating Records, ECF No. 195 at 7 ("The data record itself – the phone extraction – was produced in native format to counsel for the defendant on July 14, 2022, more than two years ago. . . . The one-page Device Handling and Tracking Record, the certification of the data, was produced to Franco on February 15, 2024."). This satisfies the notice requirements of Rules 902(13)–(14). *See* Fed. R. Evid. 902(13) ("The proponent also must meet the notice requirements of Rule 902(11)"); Fed. R. Evid. 902(14) (same); Fed. R. Evid. 902(11) ("Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.").

(KAM), 2024 WL 4295508, at *13 (E.D.N.Y. Sept. 26, 2024) (holding that under Federal Rule of Evidence 902(14), "assuming that it produces an appropriate certification from a qualified person, the Government may authenticate the extraction of [Defendant's] phone without live testimony").

c.   Enterprise Rental Car Business Records

The Government seeks to introduce "Enterprise Rental Car business records showing rentals by Daniella Fox, the defendant's co-conspirator, during the period of the conspiracy," as "self-authenticating under Rule 902(11)." Mot. *in Limine* and Notice of Intent to Admit Self-Authenticating Records, ECF No. 195 at 8.

If the Government produces such records and a certification stating that the records are "are kept in the course of Enterprise's rental business . . . making the record was a regular practice of Enterprise when it rented a car . . . [and] [t]he records were made at the time the cars were rented," as the Government states, then the documents can be deemed self-authenticating. *Id.* at 8; Fed. R. Evid. 902(11) ("The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court."); Fed. R. Evid. 803(6)(A)–(C) ("(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity . . ."); *United States v. Komasa*, 767 F.3d 151, 154 (2d Cir. 2014) ("A record of regularly conducted business activity would be eligible for admission as self-authenticating under Rules 902(11) and 803(6) if the record is accompanied by a written declaration of its custodian, or other qualified person . . .").

Accordingly, while the Court finds that the various documents that the Government seeks to introduce would be deemed self-authenticating, if they meet the requirements laid out above, the Court will reserve ruling on the admissibility of such documents for the trial. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal citation omitted).

### 5.  Motion Regarding Expert Testimony About Drug Matters[3]

"Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on [their] own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008); *see also United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991); *United States v. Tapia-Ortiz*, 23 F.3d 738, 740 (2d Cir. 1994) (cautioning that expert testimony relating to "the operations of narcotics dealers ... should normally be used only for subjects that have esoteric aspects reasonably perceived as beyond the ken of the jury" (internal quotation marks omitted)).

"[T]he operations of narcotics dealers are a proper subject for expert testimony under Fed. R. Evid. 702 ... where the subject matter of the testimony is beyond the ken of the average juror." *Mejia*, 545 F.3d at 191 (quoting *Castillo*, 924 F.2d at 1232). More specifically, experts generally may testify about the meaning of words and phrases used by narcotics traffickers. *United States v. Simmons*, 923 F.2d 934, 946 (2d Cir. 1991) ("Expert testimony in the field of narcotics operations is often helpful to jurors 'who [are] likely unfamiliar with words and phrases used by narcotics dealers to camouflage their activities.'" (quoting *United States v. Kusek*, 844

---

[3] At the final pretrial conference, Notice, ECF No. 244 (Pre-Trial Conference set for Feb. 13, 2025, at 2:00 PM) (Jan. 30, 2025), the Government indicated that it no longer intends to call Special Agent David Carney of the Federal Bureau of Investigation. As a result, this issue should be moot. The Court will address the issue nonetheless, in the event anything changes with respect to the Government's trial plans.

F.2d 942, 949 (2d Cir. 1988))); *United States v. Reddick*, 284 F. Supp. 3d 159 (D. Conn. 2018) (allowing testimony as to "the general practice of narcotics sellers and buyers to use coded language and the meaning of common drug slang terms" (citing *Mejia*, 545 F.3d at 189)). Expert testimony cannot "impermissibly mirror[] the testimony offered by fact witnesses," *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994), however, where the testimony is not self-evident, such testimony can be particularly useful. *See United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003) (noting that expert testimony related to jargon is particularly relevant where part of the defendants' defense strategy was to emphasize that the language used could be interpreted to be innocuous). A narcotics expert may not provide "sweeping conclusions," but can "testify specifically about which drugs were involved." *Id.* at 53.

The Government wishes to call "Special Agent David Carney of the Federal Bureau of Investigation, [to] discuss common practices in drug distribution, including common language and vernacular used by drug traffickers; typical quantities and prices for distribution of narcotics; common practices in the distribution of narcotics; and the utility of certain items (i.e., 'tools of the trade') to further drug trafficking operations. Special Agent Carney's expected testimony would be that drug traffickers often speak in code to obscure their activities from law enforcement, and to discuss typical words and phrases used to reference illicit drugs, drug trafficking, and drug prices." Mot. at 7. The Government also argues that "[c]ritically, Special Agent Carney played no role in the investigation of this case and has no knowledge of the facts of this case. He has not viewed any of the evidence in this case, did not participate at all in the investigation, and is unfamiliar with the defendant." *Id.* at 8. Regarding Special Agent Carney's qualifications, the Government states that he has "approximately [a] dozen years of experience in

narcotics-related investigations." *Id.* at 9. And that "[s]ince 2013, he has been a member of the Northern Connecticut Violent Crime and Gang Task Force out of the FBI's Hartford office." *Id.*

"[T]he appropriateness of a narcotics expert's testimony is a highly fact-dependent inquiry[.]" *United States v. Best*, No. 3:20-CR-28 (VAB), 2022 WL 4008087, at *19 (D. Conn. Sept. 2, 2022) Whether or not a specific narcotics expert should be allowed to testify will depend on the nature and character of the testimony that they will give—to the extent that Special Agent David Carney will testify about non-case-specific things surrounding drug trafficking that would be helpful to the jury, but would be beyond the knowledge of the average juror, such testimony may be admissible. *See e.g.*, *United States v. Taylor*, No. 23-CR-62-OAW, 2025 WL 243391, at *1 (D. Conn. Jan. 20, 2025) ("Mr. Pappas's contention that drug code and common practices in drug distribution are not proper subjects for expert testimony is without merit. However, Agent Kerwick will be prohibited from explaining commonly understood phrases."). *See e.g.*, *United States v. Cruz*, 363 F.3d 187 (2d Cir. 2004) ("Although the government may ordinarily call on law enforcement officials to decipher drug jargon, district courts, in their role as gatekeepers, must be ever vigilant against expert testimony that could stray from the scope of a witness' expertise."); *United States v. Reddick*, 284 F. Supp. 3d 159, 162 (D. Conn. 2018) ("For an expert to come in to state the obvious about guns and drug dealing going together not only exceeds the permissible limits of expert testimony but also comes with some unfair risk that the jury will conclude largely because of the expert's imprimatur that the gun at issue here must have had something to do with drug dealing. It is one thing for an expert to testify based on specialized knowledge about narcotics packaging materials and quite another for an expert to testify that drug dealers are commonly or usually gun criminals as well.").

Accordingly, because Special Agent David Carney's testimony is beyond the scope of what the Government has provided in its motion, the Court will deny the Government's motion without prejudice for renewal so that it may reserve judgment on this issue for trial. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal citation omitted).

### 6. *Motion Regarding Authentication of Drug Exhibits*

Authentication is "a condition precedent to admitting evidence." *United States v. Vayner*, 769 F.3d 125, 129 (2d Cir. 2014) (quoting *United States v. Sliker*, 751 F.2d 477, 497 (2d Cir. 1984)). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "[That] requirement is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (quoting *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991)). This standard "is not particularly high." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007).

The Government seeks to introduce "various drug exhibits at trial including drugs seized during a search of a parcel and drugs seized during a search of the defendant's residence as well as packaging and other paraphernalia seized." Mot. at 10. The Government intends to call witnesses that will "be able to identify the exhibits and explain how, where and from whom they were obtained," including "the chemists who analyzed each exhibit[.]" *Id.* The Government contends that its "drug exhibits were handled in accordance with law enforcement's established

procedures and are substantially as they were when law enforcement obtained them during the investigation of this case." *Id.* at 11.

"[D]irect testimony by a knowledgeable witness satisfies the rule [for authentication]" *Platt as co-trustees of Platt Fam. Artwork Tr. v. Michaan*, 695 F. Supp. 3d 420, 437 (S.D.N.Y. 2023), *appeal dismissed sub nom. Platt co -trustee of Platt Fam. Artwork Tr. v. Michaan*, No. 23-7676, 2023 WL 9510839 (2d Cir. Dec. 27, 2023) (citing Fed. R. Evid. 901(b)(1) ("The following are examples only—not a complete list—of evidence that satisfies the [authentication] requirement: . . . Testimony that an item is what it is claimed to be.")).

Accordingly, if the Government provides direct testimony by a knowledgeable witness of the various drug exhibits that it seeks to introduce at trial, that testimony may satisfy the authentication requirement, however, since the admissibility of this testimony depends on the specific testimony of the Government's witnesses at the time of trial, the Court will deny the Government's motion without prejudice for renewal so that it may reserve judgment on this issue for trial. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal citation omitted).

### 7. *Motion Regarding Video Evidence*

All evidence "is subject to the general balancing rule of [Federal Rule of Evidence] 403, which provides that 'evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Cameron v. City of New York*, 598 F.3d 50, 62 (quoting Fed. R. Evid. 403).

The Government intends to introduce "certain audio and video recordings which were collected from a cellular telephone belonging to Willie Franco." Mot. at 11. Specifically, the Government argues that these recordings are "all . . . either capture Franco visually or on which he audibly speaks, appear to have been recorded either by Franco or by co-conspirator Daniella Fox. All of the recordings were made within the time period of the conspiracy. And it appears on all of the recordings that Franco is aware that he is recording and being recorded – none were made surreptitiously." *Id.* at 11–12.

The Government argues that "these videos may have an emotional effect on jurors, they nevertheless should be admitted because of their overwhelming probative value." *Id.* at 13. However, "[t]he Government proposes that it play a portion of these videos to the Court at the pre-trial conference or at another hearing, so the Court can fully appreciate both their high evidentiary value and the nature of the emotional response they may elicit and so the Court can tailor appropriate jury *voir dire*." *Id.*

The Court agrees, in part.

Having viewed some of these videos at the final pretrial conference, the admission of some of these videos, especially given their depiction of drug use, may require exclusion, if not substantial editing, because their "probative value is substantially outweighed by . . . [their] undue prejudice." Fed. R. Evid. 403. Given other evidence expected to be presented at trial, including live testimony, the showing of some of these videos also may result in "needlessly presenting cumulative evidence." *Id.*

Accordingly, because these videos may have an emotional effect on the jurors that far outweighs their probative value, the Court will wait until trial before ultimately ruling on their admissibility. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine

may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal citation omitted).

### 8. Motion Regarding Other Potential Bad Act Evidence

Evidence of prior crimes, wrongs, or acts may be admitted in some circumstances for limited purposes such as proving motive or impeaching a witness's credibility. *See* Fed. R. Evid. 404(b) (noting that evidence of other past crimes, wrongs, or acts "is not admissible to prove a person's character" but that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). The Second Circuit follows the inclusionary rule for other act evidence under Rule 404(b), "which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) (quotation marks omitted). This rule, however, "is not a carte blanche to admit prejudicial extrinsic act evidence [that] is offered to prove propensity, ... or otherwise to allow propensity evidence in sheep's clothing." *Id.* (alteration in original) (citations and quotation marks omitted).

At all times, however, such evidence is subject to the balancing test of Rule 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice." Fed. R. Evid. 403; *see also Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) ("Convictions for crimes or other bad acts that bear a close resemblance to actions alleged in the current case are likely to run afoul of Rule 404(b), because they cause unfair prejudice to the party against whom they are offered by suggesting that the party has a propensity to commit such acts.").

Additionally, under Rule 404(b)(3), in a criminal case, the Government must:

(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at

trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer

the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial—or in any form during trial if the court, for good cause,

excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).

"In 2020, Rule 404(b)'s notice requirement was amended to require the Government to

articulate a non-propensity purpose for which the evidence is offered and the basis for

concluding that the evidence is relevant in light of this purpose. The Committee stated that the

amendment was intended to require the Government to provide not only the general nature of the

evidence but also to describe the specific act that the evidence would tend to prove, and explain

the relevance of the evidence for a non-propensity purpose." *United States v. Patel*, No. 3:21-

CR-220 (VAB), 2023 WL 2643815, at *26 (D. Conn. Mar. 27, 2023) (internal citations and

quotation marks omitted) (citing Fed. R. Evid. 404 Committee Notes (2020 Amend.)).

The Government argues that it may potentially introduce bad act evidence against Mr.

Franco regarding previous criminal conduct and domestic violence depending on the defense and

cross-examination undertaken by Mr. Franco that would open the door or make such evidence

highly relevant. *See* Mot. at 13–14. The Government contends that were it to introduce such

evidence it would "NOT be introduced to prove bad character and actions in conformity

therewith," but rather some other permissible reason. *See id.* at 15–16.

The Court finds that this notice is insufficient in complying with Rule 404(b).

As mentioned above, Rule 404(b)(3) requires the Government to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose[.]" Fed. R. Evid. 403(b)(3)(B). Yet the Government has not given those reasons in its notice here. In fact, the Government has instead directly stated that it is unsure if it will introduce such evidence, and it "do not yet know the purpose for the introduction" of such evidence at least in regard to evidence of previous criminal conduct. Mot. at 15. This notice is plainly insufficient. *But see Patel*, 2023 WL 2643815, at *26 ("The Government's amended Rule 404(b) notice, provided more than a month before trial, is sufficient. In the notice, the Government describes each category of evidence, includes permissible purposes and the reasoning that supports each purpose, and offers examples of relevant evidence that has been produced to Defendants.").

The Government premises the lack of clarity of the purpose of the introduction of such bad act evidence on potential defenses that Mr. Franco may raise. Mot. at 14. The Court understands the difficulties in providing proper notice in such an event, however, "[t]o the extent the Government intends to use 404(b) evidence that was not properly noticed before trial, the Court may use its discretion to limit or exclude such evidence[.]" *Patel*, 2023 WL 2643815, at *26 (D. Conn. Mar. 27, 2023) (citing *United States v. Mamadjonov*, No. 3:18-cr-34 (VAB), 2023 WL 2155852, at *3–4 (D. Conn. Feb. 21, 2023)).

Nevertheless, some potential bad act evidence, such as evidence related to domestic violence, may result in "unfair prejudice" under Rule 403.

Accordingly, in an abundance of caution, the Court will reserve judgment of the admissibility of the potential bad act evidence for trial. *See In re MTBE*, 643 F. Supp. 2d at 476

("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal citation omitted).

**IV.    CONCLUSION**

For the foregoing reasons, these motions *in limine* have been addressed as follows:

The Government's motion *in limine* number one, moving for opening statements, is **DENIED**.

The Government's motion *in limine* number two, regarding witness sequestration and exemption from sequestration of U.S. Postal Inspector Geoff Maynard, is **GRANTED**.

The Government's motion *in limine* number three, regarding Mr. Franco's criminal history, is **DENIED** without prejudice to renewal at trial solely for the purpose of the introduction of criminal records to prove the elements of Count Four, consistent with this Ruling and Order.

The Government's motion *in limine* number four, regarding the self-authentication of records, is **GRANTED**, consistent with this Ruling and Order.

The Government's motion *in limine* number five, regarding the admission of expert testimony from Special Agent David Carney of the Federal Bureau of Investigation, is **DENIED** without prejudice to renewal at trial.

The Government's motion *in limine* number six, regarding the authentication of drug exhibits, is **DENIED** without prejudice to renewal at trial.

The Government's motion *in limine* number seven, noticing the Court of video evidence, is **DENIED** without prejudice to renewal at trial.

The Government's motion *in limine* number eight, noticing the Court of potential other bad act evidence, is **DENIED** without prejudice to renewal at trial.

**SO ORDERED** at New Haven, Connecticut, this 14th day of February, 2025.

　　/s/ Victor A. Bolden　　　　　　　
Victor A. Bolden
United States District Judge